733 F.2d 867
 Donald J. DEVINE, Director, Office of Personnel Management, Petitioner,
v.
C. Chester BRISCO, Arbitrator, United States Department of
Justice, Immigration and Naturalization Service,
et al., Respondents.
 Appeal No. 83-1110.
 United States Court of Appeals,
Federal Circuit.
 April 27, 1984.
 
 George M. Beasley, III, Washington, D.C., argued for petitioner. With him on the brief were J. Paul McGrath, Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C.
 Steven E. Abow and Jill Gerstenfield, Washington, D.C., of counsel.
 Charles A. Hobbie, Washington, D.C., argued for respondent. With him on the brief was Mark D. Roth, Washington, D.C.
 Before BALDWIN, MILLER and SMITH, Circuit Judges.
 JACK R. MILLER, Circuit Judge.
 
 
 1
 Donald J. Devine, Director of the Office of Personnel Management ("OPM"), pursuant to 5 U.S.C. Sec. 7703(d) (1982),[1] brings this petition for review of an arbitration award, issued by respondent C. Chester Brisco ("Arbitrator Brisco"), reducing the duration of the suspension given to Ross E. Parrish, Jr., the grievant, to 30 days.[2] Petitioner also named the United States Department of Justice, Immigration and Naturalization Service, Western Regional Office ("INS"), and the National Immigration and Naturalization Service Council, American Federation of Government Employees, Local 2805, AFL-CIO ("AFGE"), as respondents. Petitioner asserts that Arbitrator Brisco erred in interpreting a civil service law and that his decision, if allowed to stand, will have a substantial impact on civil service law because it would allow parties to a collective bargaining agreement to abrogate the harmful error standard of 5 U.S.C. Sec. 7701(c)(2)(A) (1982). We exercise our discretion to grant petitioner's request for review and reverse Arbitrator Brisco's decision reducing Parrish's suspension.
 
 BACKGROUND
 
 2
 In a letter dated November 5, 1981, INS proposed removing, or taking some lesser disciplinary action against, Ross E. Parrish, Jr., an INS Immigration Inspector, for the following reasons: inflicting bodily injury to another while on duty on April 7, 1981 (Reason I), refusal to carry out a proper order from a supervisor on or about May 23, 1981 (Reason II), unauthorized possession of a Government document (Reason III), and misuse of authority and an official Government document (Reason IV). Parrish's representative, AFGE Local 2805 President Sherman M. Swanson, responded to INS's proposal of adverse action in a letter dated November 18, 1981. After considering this response, INS District Director James J. O'Keefe, in his letter of January 7, 1982, sustained Reasons I (partially) and II (entirely), did not sustain Reasons III and IV, and imposed a 60-day suspension for the sustained Reasons. O'Keefe's letter notified Parrish of his right to appeal the suspension either to the Merit Systems Protection Board ("MSPB") or under the grievance and arbitration procedure established by the collective bargaining agreement between AFGE and INS.
 
 
 3
 Parrish elected to challenge his suspension through the grievance and arbitration procedure, and a grievance was filed on his behalf by AFGE. The parties, AFGE and INS, selected C. Chester Brisco as the arbitrator and submitted the following issues for resolution: (1) "[d]id the Service suspend Ross E. Parrish for 60 days for just and sufficient cause and only for such reasons which promote the efficiency of the Service?" and (2) "[i]f no [sic], what is the appropriate remedy?"
 
 
 4
 In contesting Parrish's suspension before Arbitrator Brisco, AFGE argued for restoration of Parrish's lost pay and erasure of the disciplinary action from the record, because: the credibility of those testifying that Parrish inflicted bodily injury was questionable; Parrish's use of force was a reflex action in response to being attacked; the order given by Parrish's supervisor was unlawful; and INS violated Article 31, Section F. (3) of the collective bargaining agreement[3] by delaying unreasonably in notifying Parrish of the proposed disciplinary action. The last of these arguments is set forth in AFGE's post-hearing brief as follows:
 
 
 5
 The only answer that a reasonable person can conclude is that management failed to follow the terms of the contract with the union. It can reasonably be established that when a disciplinary action is not taken within a reasonable period of time after occurrence, the corrective nature of the disciplinary action loses its rational connection with the incident and merely becomes punitive. In order for industrial discipline to survive it must be corrective rather than punitive, or so I have been led to believe. Supposedly management's final intent is to correct the deficient individual's behavior and prevent re-occurrence [sic] of similar acts. When the discipline is imposed long after the alleged wrongful act (ten months in this case) it becomes arbitrary and capricious. We must contend that this unnecessary ten month delay by the service is clearly a violation of the present labor agreement, specifically, Article 31f(3).
 
 
 6
 INS sought denial of the grievance, because the reasons for the suspensions were supported by testimony. The discipline given to Parrish was said to have been imposed in a timely manner, and, in any event, the delay was not shown to have been harmful error under 5 U.S.C. Sec. 7701(c)(2)(A) which prejudiced Parrish's rights or his ability to defend himself.
 
 
 7
 Addressing the timeliness of the notice of proposed discipline first, Arbitrator Brisco stated that although the harmful error rule applied for appeals to the MSPB, an arbitration proceeding is governed by the collective bargaining agreement. He found that the collective bargaining agreement only incorporated 5 U.S.C. Sec. 7701(c)(1) (1982), but not the harmful error rule of 5 U.S.C. Sec. 7701(c)(2)(A) (1982), because only the language of the former subsection was used in the collective bargaining agreement,[4] which evidenced the parties' intent to exclude the harmful error rule.[5] Therefore, Arbitrator Brisco decided that the question of timeliness had to be considered as a part of the just cause standard, whereby discipline imposed long after the wrongful act is deemed to lack just cause. Article 31, Section F. (3) of the collective bargaining agreement requiring that notice of proposed discipline be furnished "at the earliest practicable date after the alleged offense" was cited as support for using the just cause standard.
 
 
 8
 Turning to the merits of the grievance, Arbitrator Brisco ruled that Parrish's conduct was clearly insubordinate, but found that the disciplinary action was without just cause, because INS offered no explanation for waiting from May 23, 1981, when it had all the facts, until November 12, 1981 to inform Parrish that he would be disciplined. As to the charge of inflicting bodily injury to another while on duty, Arbitrator Brisco concluded that Parrish did commit this action and that he lacked sufficient cause for doing so. The delay from April 7, 1981, when the incident occurred, until November 12, 1981, when Parrish received notice of the proposed disciplinary action, was deemed reasonable, because investigation of the incident was fairly complex; there were a number of witnesses and INS had to coordinate its efforts with the U.S. Attorney's Office which was considering criminal prosecution.[6] Finding that the agency had imposed a 30-day suspension for each of the sustained reasons, Arbitrator Brisco overturned the 30-day suspension for insubordination in view of his conclusion that this discipline lacked good cause. The 30-day suspension for inflicting bodily injury while on duty was sustained.
 
 
 9
 OPM received Arbitrator Brisco's decision on September 23, 1982 and filed a petition for reconsideration pursuant to 5 U.S.C. Sec. 7703(d) on November 16, 1982. Arbitrator Brisco denied the petition on December 10, 1982, saying that even if he felt disposed to grant the relief OPM requested, which he did not, he no longer had authority over the matter absent a new mutual grant of jurisdiction by the parties. The decision was received by OPM on December 14, 1982, and OPM filed its petition for review by this court on January 13, 1983.
 
 ANALYSIS
 Jurisdiction
 
 10
 Under 5 U.S.C. Sec. 7703(d) in combination with 5 U.S.C. Sec. 7121(f), the Director of OPM may petition for review of an arbitrator's decision if it will have a substantial impact on a civil service law, rule, or regulation. When such a petition is filed, it is incumbent upon OPM to demonstrate that the decision appealed from will have a substantial impact on civil service law. Devine v. Sutermeister, 724 F.2d 1558, 1562 (Fed.Cir.1983). This court, however, must independently decide whether an exercise of its discretionary jurisdiction is warranted. Id. In determining whether such discretion should be exercised, we must balance the desirability of review against the traditional labor law policy of judicial deference to arbitrators' decisions. Devine v. Nutt, 718 F.2d 1048, 1052 (Fed.Cir.1983).
 
 
 11
 We agree with OPM that jurisdiction should be exercised in this case, because it raises for the first time the issue of whether an arbitrator can refuse to apply the harmful error rule if he concludes that the collective bargaining agreement does not require application of the rule.
 
 This court stated in Devine v. Nutt:
 
 12
 Judicial deference to an arbitral award may be inappropriate when the award is in apparent conflict with a federal statute that is distinct from the operation of the collective bargaining agreement.
 
 
 13
 718 F.2d at 1053. Under 5 U.S.C. Sec. 7701(c)(2)(A), an agency action may not be sustained if the procedures used to arrive at a decision are shown to have been harmful error. Here, Arbitrator Brisco appears to have acted inconsistently with this statutory provision by refusing to apply the harmful error rule because it was not incorporated in the collective bargaining agreement. Such a decision, if allowed to stand, will have a substantial impact upon whether Congressional enactments concerning the civil service will be followed and how much freedom agencies and unions will have in drafting collective bargaining agreements involving civil servants. Accordingly, we grant the petition for review and exercise our jurisdiction.
 
 
 14
 AFGE argues that the issue presented in OPM's petition was decided in Devine v. Nutt, and, therefore, we should not exercise our jurisdiction in this case. However, Devine v. Nutt did not address the same question, but rather was concerned with whether the harmful error standard was met where the union raised procedural errors on its own behalf during proceedings before the arbitrator.
 
 
 15
 AFGE further argues that the petition for reconsideration was submitted to Arbitrator Brisco 54 days after OPM's receipt of his decision, and, therefore, was not timely filed. In Devine v. Sutermeister, 733 F.2d 892 at 894 order at 3 (Fed.Cir. April 12, 1983), this court determined that OPM must seek reconsideration within 30 days of an arbitrator's decision. Subsequently, it was decided that this holding would not apply retroactively. Devine v. Levin, No. 13, order at 2, 733 F.2d 892 at 894 (Fed.Cir. 1983). In the present case, OPM petitioned Arbitrator Brisco for reconsideration prior to April 12, 1983. Accordingly, OPM's failure to seek reconsideration in a timely manner is excused.
 
 The Harmful Error Rule
 
 16
 It is elementary that parties to a collective bargaining agreement cannot bargain for provisions that are contrary to the law. See Graphic Arts International Union, Local No. 280 v. N.L.R.B., 596 F.2d 904 (9th Cir.1979); Thompson v. Board of Education, 526 F.Supp. 1035 (W.D.Mich.1981). In providing for collective bargaining between the Government and labor organizations, Congress enacted 5 U.S.C. Sec. 7117(a)(2) (1982), which provides that "[t]he duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any Government-wide rule or regulation," extend to certain agency regulations (emphasis added). This provision has been interpreted to require unions and federal agencies to negotiate over terms and conditions of employment, unless a bargaining proposal is inconsistent with existing federal law, rule, or regulation. Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority, --- U.S. ----, ----, 104 S.Ct. 439, 441, 78 L.Ed.2d 195 (1983). Since Congress has affirmatively preserved certain agency rights by enacting the Civil Service Reform Act of 1978, an agency cannot contract away those rights. United States Department of Justice v. Federal Labor Relations Authority, 709 F.2d 724 (D.C.Cir.1983).
 
 
 17
 As to an arbitrator's authority to make awards under a collective bargaining agreement, this court held in Devine v. Nutt that:
 
 
 18
 [a]lthough the arbitrator is free to make an award consonant with the scope of the collective bargaining agreement, he must not issue awards that conflict with "external law" such as federal statutes and regulations (citations omitted).
 
 
 19
 718 F.2d at 1055.
 
 
 20
 In this case, Arbitrator Brisco's decision contravened these principles.
 
 
 21
 When Congress enacted the harmful error rule of 5 U.S.C. Sec. 7701(c)(2)(A), it intended to change the standard of appellate review to avoid unnecessary reversal of agency actions because of technical procedural oversights. S.Rep. No. 969, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2776. By ruling that parties to a collective bargaining agreement could exclude the harmful error rule from the agreement, Arbitrator Brisco effectively and erroneously concluded that INS and AFGE had authority to abrogate a provision of the Civil Service Reform Act of 1978.
 
 
 22
 Under the Congressionally-established standard of review, the MSPB must sustain an agency decision "supported by a preponderance of the evidence," 5 U.S.C. Sec. 7701(c)(1)(B), unless the employee shows, among other things, harmful error in the agency's decision-making procedures, 5 U.S.C. Sec. 7701(c)(2)(A). Devine v. White, 697 F.2d 421, 441 (D.C.Cir.1983). Arbitrators are required to follow this rule by 5 U.S.C. Sec. 7121(e)(2) (1982). Devine v. Nutt, 718 F.2d at 1054. The harmful error rule is not, however, limited in applicability to situations where employees are prejudiced, but extends to instances where a union can show violations tantamount to harmful error to itself. Id. at 1055. Accordingly, we hold that Arbitrator Brisco's decision to overturn Parrish's suspension for insubordination without requiring Parrish or AFGE to show harmful error was not in accordance with the law.[7]
 
 
 23
 The harmful error rule can appropriately be regarded as part of the " 'standard of proof' (if not of the burden of proof itself)," and, therefore, must be applied by the arbitrator. Devine v. Nutt, 718 F.2d at 1054. If this court were to sustain Arbitrator Brisco's decision, the lower standard (or burden) of proof required by him compared to that required by the MSPB would promote inconsistency and forum shopping, contrary to Congressional intent. H.R.Rep. No. 1717, 95th Cong., 2d Sess. 157, reprinted in 1978 U.S.Code Cong. & Ad.News 2891.
 
 
 24
 There is no contention that Parrish was prejudiced by INS's delay in advising him of its proposed disciplinary action. In its brief, AFGE even asserts that Arbitrator Brisco's award is similar to that in Devine v. Nutt, because there was no prejudice to the individual grievant in either case.
 
 
 25
 AFGE does, however, argue that INS's delay in giving Parrish notice of the proposed disciplinary action harmed AFGE in the same way that the union was harmed by a similar delay in Devine v. Nutt. However, the facts of the present case are distinguishable from those in Devine v. Nutt, where the union argued to the arbitrator that the agency's failure to comply with the notification time limitations of the collective bargaining agreement and its failure to promptly supply requested information interfered with the union's preparation for hearings and resulted in the filing of additional unfair labor practice charges. Because the agency failed to comply with these provisions of the agreement, the arbitrator mitigated the agency-imposed penalties even though he found that the grievants were not personally prejudiced. In this case, however, there is no indication in the record that AFGE presented any evidence to Arbitrator Brisco that it was harmed by INS's delay in giving notice to Parrish;[8] further, AFGE's post-hearing brief makes no assertion that AFGE was harmed by the delay. In the absence of a showing of harm to AFGE, we are, in effect, asked to assume the existence of harmful error, because timely notice is lacking here as it was in Devine v. Nutt. However, a mere conjectural possibility of prejudice cannot suffice as a basis for inferring actual prejudice. Devine v. White, 697 F.2d at 442. Moreover, since the issue of harm to the union was not raised before Arbitrator Brisco, it cannot now be raised for the first time on appeal. Duffy v. U.S., 690 F.2d 889, 896 (Ct.Cl.1982); Razik v. U.S., 525 F.2d 1028, 1034, 208 Ct.Cl. 265 (1975).
 
 
 26
 In view of the foregoing, Arbitrator Brisco's decision overturning the 30-day suspension for insubordination is reversed.[9],[10]
 
 
 27
 REVERSED.
 
 
 
 [1]
 5 U.S.C. Sec. 7703(d) provides:
 (d) The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive. If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied. In addition to the named respondent, the Board and all other parties to the proceedings before the Board shall have the right to appear in the proceeding before the Court of Appeals. The granting of the petition for judicial review shall be at the discretion of the Court of Appeals.
 
 
 [2]
 OPM petitions for review under 5 U.S.C. Sec. 7703(d) are made applicable to arbitration awards by 5 U.S.C. Sec. 7121(f) (1982)
 
 
 [3]
 Article 31--Disciplinary Actions, Section F. (3) provides in pertinent part:
 The Employer shall furnish employees with notices of proposed disciplinary actions at the earliest practicable date after the alleged offense has been committed and made known to the Employer.
 
 
 [4]
 5 U.S.C. Sec. 7701(c) (1982) provides:
 (1) Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision--
 (A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or
 (B) in any other case, is supported by a preponderance of the evidence.
 (2) Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment--
 (A) shows harmful error in the application of the agency's procedures in arriving at such decision;
 (B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or
 (C) shows that the decision was not in accordance with law.
 
 
 [5]
 The pertinent portion of the collective bargaining agreement is Article 31, Section G. (4) which provides:
 In arbitration over adverse actions for performance or efficiency under 5 USC Sections 4303 and 7512 (Civil Service Reform Act of 1978), an arbitrator shall be governed by Section 7701(c) of Title 5. That provision provides that an action shall be affirmed if for unacceptable performance if supported by substantial evidence; and affirmed if for efficiency if supported by the preponderance of the evidence.
 
 
 [6]
 The U.S. Attorney's Office decided not to pursue criminal prosecution, but recommended that administrative sanctions be imposed if appropriate
 
 
 [7]
 We need not decide whether Arbitrator Brisco correctly determined that the parties to the collective bargaining agreement intended to exclude the harmful error rule
 
 
 [8]
 The only witnesses called by AFGE were Parrish and Immigration Inspectors Jones and Crusilla. None testified that AFGE was harmed by INS's delay in giving Parrish notice of the proposed disciplinary action
 
 
 [9]
 The only issue before us is petitioner's request for review of Arbitrator Brisco's decision to overturn Parrish's suspension for insubordination. Accordingly, we have not considered whether Arbitrator Brisco's decision to sustain the suspension for inflicting bodily harm while on duty was proper
 
 
 [10]
 We decline to grant AFGE's request made at oral argument to vacate and remand for further proceedings, because AFGE already had the opportunity to present evidence of harmful error to Arbitrator Brisco and failed to do so