Donald J. DEVINE, Director, Office of Personnel Management, Petitioner,

v.

Edward LEVIN, Arbitrator, and American Federation of Government Employees, Local 1917, Respondents.

**Appeal No. 83–952.**

United States Court of Appeals, Federal Circuit.

July 12, 1984.

George M. Beasley, III, Washington, D.C., argued for petitioner.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Washington, D.C., were on brief for petitioner.

James F. Hicks, Washington, D.C., of counsel.

Gay Snyder, New Brunswick, N.J., argued for respondents.

Mark Roth, Washington, D.C., was on brief for respondents.

Before BALDWIN, MILLER and SMITH, Circuit Judges.

**EDWARD S. SMITH, Circuit Judge.**

In this arbitration case, Donald J. Devine, director of the Office of Personnel Management (OPM), petitions this court for review of an arbitrator's award reducing a civilian employee's misconduct penalty from a 30-day suspension to a written reprimand, on the ground that the grievance was not arbitrable. We exercise our statutory discretion to assume jurisdiction over the petition and reverse and vacate the arbitrator's award.

### Issues

We consider four issues in this case: (1) whether we should exercise our statutory discretion to accept OPM's petition for review; (2) whether OPM is barred from raising the issue of arbitrability; (3) whether the grievance is indeed arbitrable; and (4) whether laches or harmful error precludes rejection of the arbitrator's award.

### Background

This case involves the decision of the United States Immigration and Naturalization Service (INS) to suspend one of its employees, Carol Lentini Tapia, for 30 days for willful misuse of a Government-leased vehicle. At the time in question, Ms. Tapia was a deportation officer, allegedly acting in a supervisory capacity, detailed for temporary duty from the INS New York district to the Cuban refugee center at Fort Chaffee, Arkansas. During the first part of Ms. Tapia's duty the INS openly adopted a liberal policy concerning both personal and official use of Government vehicles. This was because of the long and stressful hours which work at the Cuban refugee center demanded. However, in February 1981 the INS advised its Fort Chafee employees that restrictions on personal vehicle use would be strictly enforced in the future. It was after this announcement that Ms. Tapia twice used a Government car for personal reasons.

The INS subsequently informed Ms. Tapia that she would be suspended for 30 days without pay, effective in October 1981. Ms. Tapia challenged the suspension under the negotiated grievance procedure of the collective bargaining agreement.[1] The arbitrator found that, although Ms. Tapia had used a Government vehicle for other than official purposes, the misuse was not, under the circumstances, willful, and the suspension should be reduced to a written reprimand. After receiving the arbitrator's decision, the director of OPM moved to intervene in the matter and filed a petition with the arbitrator for reconsideration[2] on the ground that Ms. Tapia's case was not arbitrable. The arbitrator denied the request for reconsideration, and OPM petitions here.

### Opinion

#### 1. This Court's Discretionary Jurisdiction

This court may, at its discretion, grant the OPM director's petition for review of an arbitrator's decision, where the director has determined, in his discretion, that the arbitrator "erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the * * * [arbitrator's] decision will have a substantial impact on a civil service law, rule, regulation, or policy directive."[3]

OPM contends that the arbitrator erred in failing to set aside his award because Ms. Tapia was in fact a "supervisor"

---

**1.** *See* 5 U.S.C. § 7121(e) (1982).

**2.** *See* 5 U.S.C. § 7703(d) and note 3 *infra*. Respondents raised a question concerning the timeliness of this request, which this court rejected by order dated April 25, 1983. That order also rejected respondents' argument against this court's exercise of its discretionary review. We nevertheless address the issue of discretionary review in this full opinion. In addition, on December 2, 1983, respondents moved to strike petitioner's supplemental appendix, which mo-

tion this court denied by order dated December 8, 1983.

**3.** *Id.* This portion of the statute refers to decisions of the Merit Systems Protection Board (board). Section 7121(f) of the same title makes such OPM petitions for review applicable to arbitration awards. *See also Devine v. Brisco,* 733 F.2d 867 (Fed.Cir.1984); *Devine v. Sutermeister,* 724 F.2d 1558 (Fed.Cir.1983); *Devine v. Nutt,* 718 F.2d 1048 (Fed.Cir.1983).

at the time of her misconduct and therefore not an "employee" and union member for whom the negotiated grievance procedure was available.[4] Respondents Mr. Levin, the arbitrator, and the union, the American Federation of Government Employees, Local 1917 (AFGE), contend that OPM is barred from bringing a petition before this court, since the INS did not raise this issue before the arbitrator and in fact originally informed Ms. Tapia that she could pursue the negotiated grievance procedure. In rejecting OPM's petition for reconsideration of the award, the arbitrator cited article 32(C) of the parties' collective bargaining agreement as requiring that issues of "grievability/arbitrability" be raised as a "threshold issue." OPM responds that this is incorrect as a matter of law.

While we are mindful of the traditional labor policy of judicial deference to arbitrators' decisions,[5] we conclude that it is appropriate to exercise our discretion to consider the petition in this case. The substantive issue alone—whether Ms. Tapia's grievance was arbitrable—would have sufficient "substantial impact" on the civil service law to merit our review. The arbitrator's determination that OPM was barred from raising this issue likewise merits our review. Accordingly, we grant the petition.

### 2. Whether OPM Is Barred from Raising Arbitrability

■ As noted above, the arbitrator rejected OPM's petition for reconsideration of the award because the arbitrability question had not been raised as a threshold issue, as required by article 32(C) of the collective bargaining agreement. In sup-

port of the rejection AFGE cites the principle—and private sector cases in support thereof—that an arbitrator's powers are limited by the terms of the bargaining agreement. OPM counters that the federal sector system of arbitration is created, governed, and limited by statute—specifically, by title VII of the Civil Service Reform Act of 1978.[6] Accordingly, OPM states that the arbitrator's jurisdiction cannot extend to a case over which the statute does not grant him authority, and such jurisdictional issue may be raised at any time.

■ We agree with OPM. The arbitrator, although he is free to act within the scope of the collective bargaining agreement, may not issue awards which conflict with the applicable "external law."[7] Certainly issuance of an award in a case where the statute denies jurisdiction, assuming Ms. Tapia was a supervisor rather than an employee, would conflict with "external law." It was the arbitrator's duty, just as it is this court's duty, to consider a jurisdictional question regardless of when it was raised during the proceeding.[8] We therefore hold that the arbitrator erred in denying OPM's petition for reconsideration on the ground that the issue had been waived, and that OPM's petition raising arbitrability is properly before this court.

### 3. The Arbitrability Issue

Supervisory personnel are specifically excluded from federal sector arbitration in most cases.[9] Therefore, if Ms. Tapia was a supervisor at the time of her misuse of the Government cars, her grievance was not arbitrable. The statute defines "supervisor" as: [10]

---

4. *See* discussion in part 3 of this opinion for statutory basis of this matter.

5. *Nutt,* 718 F.2d at 1052–53.

6. *See* 5 U.S.C. §§ 7101 *et seq.*

7. *See Nutt,* 718 F.2d at 1055; *Brisco,* 733 F.2d at 872; and 5 U.S.C. § 7117(a)(2).

8. *Fincke v. United States,* 675 F.2d 289, 297 (Ct. Cl.1982). *See also* Fed.R.Civ.P. 12(h)(3).

9. 5 U.S.C. § 7103(a)(2)(B)(iii) defines "employee" as not including "a supervisor or a manage-

ment official" for purposes of chapter 71, entitled "Labor-Management Relations." More specifically, § 7112(b)(1) of that chapter provides that a bargaining unit for labor organization representation shall not be determined "to be appropriate if it includes * * * any management official or supervisor." An exception, which neither party here claims, applies under § 7135(a)(2) for certain traditionally recognized units of supervisors or management officials.

10. 5 U.S.C. § 7103(a)(10).

an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment * * * [.]

AFGE contends that OPM has offered no evidence to the arbitrator or to this court that Ms. Tapia was a supervisor, as defined above, during the relevant period at Fort Chaffee. OPM points to certain portions of the arbitration transcript, to AFGE's post-hearing brief, and to a sworn, signed statement by Ms. Tapia as evidence that she was indeed an acting supervisor at the time, although the INS issued no formal paperwork to this effect. While the record on this point is indeed sparse—no doubt because neither party raised the issue at the arbitration proceeding—we examine it in some detail.

The record does not show that Ms. Tapia received any formal supervisory appointment, promotion, or wage increase upon her temporary transfer to Fort Chaffee. At the time she was notified of her disciplinary action her papers showed her position as "deportation officer," at a grade 11, rate 05, salary $26,710 per year. The INS New York district director, Mr. Sava, who imposed the 30-day suspension on Ms. Tapia, testified at the arbitration proceeding that Ms. Tapia was at Fort Chaffee "in the acting capacity as a supervisor, supervisory deportation officer." However, on cross-examination, he admitted that he did not know personally that she was an acting supervisor, but that his knowledge was based on Ms. Tapia's statement that she was. He also stated that he did not know whether she was receiving supervisory pay while at Fort Chaffee, or whether she had received notification of a personnel action making her a supervisor. We note as well that Mr. Sava, as the official formally ad-

vising Ms. Tapia of her disciplinary action, advised her in the same letter that she could request the union to initiate arbitration to contest the action on her behalf—an avenue legally available to her, as we have said, only if she were not a supervisor.

The union, AFGE, in its post-hearing brief filed after the arbitration proceeding, noted that Ms. Tapia was never formally classified as a supervisor or given such pay or grade while at Fort Chaffee. However, in its brief AFGE also stated that "[a]t times she [Ms. Tapia] was assigned duties as an acting supervisor (most officers, at one time or other, are asked to temporarily fill in for a supervisor)."

Finally and most importantly, in a sworn statement which Ms. Tapia signed on May 3, 1981, while at Fort Chaffee, Ms. Tapia stated, in response to the following question:

Q.  Do you have anything that you wish to add to this statement.

A.  No, but there certainly wasn't any intention of misuse of a government vehicle * * *. * * * My personal feeling is that, or rumors have it that certain local hired Immigration Detention Officers, local people hired are resenting the fact that I am a female *supervisor* here and they cannot discourage me to leave Fort Chaffee and ah, so they are saying, "haven't you been here long enough, why don't you go home". That came about when Mr. Cruce who was the OIC, told me that the Immigration Detention Officers resented the fact that I was the *supervisor* here. So, my feeling is that this is why they were [trying] to harass or get even. * * * [Emphasis supplied.]

In determining whether, as a matter of law, Ms. Tapia was a supervisor, we look not merely to official titles or the lack thereof, but to the actual exercise of supervisory authority.[11] Temporary exercise of such authority, even if alternating with

11.  *See, e.g., North Car. Air Nat'l Guard & AFGE Local 3001,* 4 F.L.R.A. 44 (1980) (stressing exercise of supervisory authority, as opposed to merely resting the responsibility on someone).

nonsupervisory work, may be sufficient to elevate an employee from a bargaining unit if such temporary work is regular and substantial.[12] Use of the supervisory authority "requires the consistent exercise of independent judgment" in performing duties such as hiring, directing, assigning, etc.[13]

■ Applying the law to the undisputed record herein, we hold that Ms. Tapia was acting in a supervisory capacity at the time in question, as indeed she stated in her sworn statement. While the record is slim on the precise nature of Ms. Tapia's duties, the admission of AFGE that most deportation officers occasionally were assigned acting supervisory positions, Mr. Sava's ready concurrence that Ms. Tapia was detailed to Fort Chaffee as a supervisor, and Ms. Tapia's statement implying that her exercise of supervisory authority caused resentment against her among local officers, all lead us to conclude that remand to the arbitrator for further factual exploration of this issue would be wasteful of the resources of all concerned. We note as well that all of the statements from the record cited above were made long before OPM requested reconsideration on the arbitrability issue, so that the various parties or persons had not yet an ax to grind.

We therefore hold that Ms. Tapia was acting as a "supervisor" at the time she misused the Government vehicles. As a result, she was lifted from the bargaining unit, her grievance was not arbitrable, and the arbitrator erred in taking jurisdiction over this case.

### 4. *Laches and Harmful Error*

Finally, AFGE argues that, even if this court considers Ms. Tapia a supervisor, OPM's challenge to the arbitrator's award should be rejected because (1) it is barred by laches, given the equitable nature of Ms. Tapia's claims, or (2) it is tainted by harmful error, since the INS itself advised Ms. Tapia that she could pursue arbitration. Both of these contentions ignore the statutory framework by which Ms. Tapia's case is constrained, and the jurisdictional nature of OPM's arbitrability point, as discussed above.[14]

Since we have held that the arbitrator lacked jurisdiction over Ms. Tapia's case, we reverse the arbitrator's decision that he had jurisdiction and vacate the arbitrator's award. The only other avenue of review then available to Ms. Tapia was to the Merit Systems Protection Board (board) under 5 U.S.C. § 7701. Although the board's deadline for filing such appeals is, according to its own regulation, 20 days,[15] that deadline may be waived "for good cause shown."[16] Considering that the INS erroneously advised Ms. Tapia that she could pursue arbitration, counsel for OPM has wisely stated before this court that neither OPM nor INS would oppose the board's waiving its filing deadline in Ms. Tapia's case, should she elect to appeal her suspension to the board.

REVERSED AND VACATED.

---

12. *See, e.g., id.* (regular monthly weekend work supervising military drill sufficient to cause employee to be supervisor, even though regular daily work nonsupervisory); and *Internal Revenue Serv., Fresno Serv. Center & Nat'l Treasury Employees Union,* 7 F.L.R.A. 54 (1981) (status as temporary supervisor sufficient to elevate employee from bargaining unit, even though temporary supervisor expected to return to employee status).

13. 5 U.S.C. § 7103(a)(10).

14. AFGE cites *Nutt,* 718 F.2d at 1053–55, as controlling on harmful error. In *Nutt,* however, that part of the arbitrator's award which this court sustained did not conflict with any civil service law, unlike the case here. *See also Brisco,* 733 F.2d at 871–72.

15. 5 C.F.R. § 1201.22(b) (1984). This period would have elapsed in Ms. Tapia's case in November 1981.

16. 5 C.F.R. § 1201.12.