724 F.2d 1558
 116 L.R.R.M. (BNA) 2495
 Donald J. DEVINE, Director, Office of Personnel Management, Petitioner,
v.
R.A. SUTERMEISTER, Arbitrator; United States Customs
Service, San Francisco Region; and National
Treasury Employees Union, Respondents.
 Appeal No. 83-813.
 United States Court of Appeals,
Federal Circuit.
 Dec. 14, 1983.
 
 Lenore C. Garon, Washington, D.C., argued for petitioner. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., and David M. Cohen, Washington, D.C., Director.
 Kerry L. Adams, Washington, D.C., argued for respondent. With her on the brief were Robert M. Tobias, General Counsel, Lois G. Williams, Washington, D.C., Director of Litigation and David Handsher, San Francisco, Cal.
 Before KASHIWA, BENNETT and MILLER, Circuit Judges.
 BENNETT, Circuit Judge.
 
 
 1
 Donald J. Devine, Director of the Office of Personnel Management (OPM), brings this petition for review of an award by R.A. Sutermeister (arbitrator) that mitigated the removal of the grievant, Richard Walton, to a 30-day suspension. OPM also named the United States Customs Service (the employing agency) and the National Treasury Employees Union (NTEU) as respondents. OPM asserts that the arbitrator erred in his application of civil service law and that his decision will have a substantial impact on civil service law in that the arbitrator was without authority to mitigate the penalty imposed by the agency once he determined that Mr. Walton had obtained his appointment through fraud or misrepresentation. See 5 U.S.C. Sec. 7703(d) (1982).[1] Alternatively, OPM asserts that the arbitrator erred in substituting his judgment for that of the agency regarding the appropriateness of the penalty. We exercise our discretion to grant petitioner's request for review and affirm the arbitrator's award in all respects.
 
 BACKGROUND
 
 2
 On July 29, 1979, Richard Walton was hired by the Customs Service as a GS-4 Clerk under the Veterans' Administration Programs Extension Act of 1978, Pub.L. No. 95-520, 92 Stat. 1820. Mr. Walton submitted Standard Form 171, Personal Qualifications Statement, dated April 21, 1978, and July 11, 1979. In November 1979 he was reassigned as a Customs Entry Aide, considered a sensitive position because it involved the handling of money, checks, keys, computers, merchandise, and other sensitive matters, including intelligence. A full background investigation was thus required. In furtherance of the investigation, Walton submitted a new Form 171 and a Form 86, Security Investigation Data for Sensitive Position, both dated February 17, 1981.
 
 
 3
 A security investigation was conducted in June 1981. The investigation revealed information not disclosed by Walton on Forms 86 and 171: additional previous employment, an arrest and conviction in 1970 for carrying a concealed weapon, convictions for driving with an expired vehicle license and with no operator's license on his person, and a court-martial.
 
 
 4
 As a result of the information discovered in the investigation, Walton was sent a notice of proposed removal dated December 1, 1981, on the basis of his falsification of Forms 86 and 171. The agency's notice contained numerous counts of intentional falsification. Walton was sent a letter dated February 19, 1982, announcing his removal effective March 5, 1982. Walton was notified of his right to appeal the action either to the Merit Systems Protection Board (MSPB) or under the grievance and arbitration procedure of the National Agreement between the Customs Service and NTEU, an option provided for in 5 U.S.C. Sec. 7121(e)(1) (1982).
 
 
 5
 Walton chose to contest his removal through the negotiated grievance procedure set out in the National Agreement. The National Agreement provided a procedure for submitting an unresolved grievance to binding arbitration. See 5 U.S.C. Sec. 7121(b)(3)(C). Pursuant to the agreement, the parties selected an arbitrator, R.A. Sutermeister, and submitted the following issues for resolution: (1) whether the removal of Richard Walton was for just cause; and (2) assuming removal is not an appropriate penalty, what lesser penalty would be appropriate.[2]
 
 
 6
 In a decision dated June 30, 1982, the arbitrator made the following findings:[3] (1) Walton, though careless in filling out the forms, did not deliberately and willfully make false statements in listing his previous employment; (2) Walton did not deliberately and willfully make false statements about his reasons for termination from previous jobs; (3) Walton knew of his convictions for carrying a concealed weapon and motor vehicle offenses and deliberately failed to list them on his forms, and a penalty for that offense is justified; (4) the removal may have been promptly carried out after the need for adverse action arose, but the agency was dilatory in starting the investigation; and (5) Walton's removal would not promote the efficiency of the service.
 
 
 7
 Regarding his conclusion concerning the efficiency of the service, the arbitrator stated:
 
 
 8
 There is no doubt that the Agency must take a very firm position when an employee falsifies forms. Certainly an arbitrator cannot condone proven falsification. I can understand the Agency's stance, from hindsight, that if Walton's application had been complete, he would not have been hired. However, he was hired; he performed well enough to be promoted to Customs Aid[e]; he advanced a step in salary; and there is no evidence that he has been unreliable, dishonest, lacking in integrity, or untrustworthy in the performance of his duties in his sensitive position. In fact, there was considerable evidence to the contrary. Walton has had access to money, checks, keys, computer, intelligence, and other sensitive matters. He was continued in his position even after Ms. Maguire reviewed form 86 in November 1980.
 
 
 9
 Thus, I do not find persuasive that the efficiency of the Service will be promoted by his removal. Based on a preponderance of evidence, my conclusion is that Walton's actual performance of his duties is a much better indication of his potential with the Service than his previous employments, reasons for leaving previous jobs, and arrests and convictions which occurred (with the single exception of the aggravated assault charge which was dismissed) over 10 years ago during the turbulent period in his life following his release from duty in Viet Nam.
 
 
 10
 [Footnote omitted. Emphasis in original.]
 
 
 11
 After concluding that Walton's removal was not for just cause because it would not promote the efficiency of the service, the arbitrator mitigated the penalty to a 30-day suspension, thus providing for reinstatement and back pay. The arbitrator denied an award of attorney fees to the respondents, as he found that the agency had acted in good faith. On appeal, respondents do not contest this denial.
 
 
 12
 OPM filed a motion for reconsideration, pursuant to 5 U.S.C. Sec. 7703(d), that was denied by the arbitrator on October 18, 1982. OPM filed its petition for review with this court on November 17, 1982.
 
 DISCUSSION
 
 13
 * At the outset, it is worth noting that this appeal by OPM is brought under 5 U.S.C. Sec. 7703(d), which in relevant part states:
 
 
 14
 The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive.... The granting of the petition for judicial review shall be at the discretion of the Court of Appeals.
 
 
 15
 The legislative history of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), elaborates on the clear meaning of the statute:
 
 
 16
 The Committee amended this section to emphasize that the OPM should seek judicial review only in those exceptional cases where it finds that the Board erred, as a matter of law, in interpreting the civil service laws, and that the erroneous decision will have a substantial impact on how aspects of the civil service rules are interpreted in the future. The Director of OPM should not seek judicial review if the potential effect of the decision will be limited to the facts of the case.... While an employee or applicant aggrieved by the agency action is entitled as a matter of right to judicial review, this will not be the case when the Director seeks review. The subsection specifies that judicial review shall be at the discretion of the court. If it determines, for example, that the issues raised will not have a substantial impact on the administration of civil service laws ... the court may decline to accept the petition for review.
 
 
 17
 S.REP. NO. 969, 95th Cong.2d Sess. 64, reprinted in 1978 U.S.CODE CONG. & AD.NEWS 2723, 2786. While the above references speak of appeal from a board decision, 5 U.S.C. Sec. 7121(f) (1982) explicitly applies similar considerations to an award by arbitration. See note 13, infra.
 
 
 18
 From the foregoing, it is clear that it is incumbent upon OPM to demonstrate that the decision appealed from will have a "substantial impact" on civil service law. As recognized in our recent decision in Devine v. Nutt, 718 F.2d 1048, 1052 (Fed.Cir.1983), OPM's assessment of "substantial impact" is not binding on the court. Rather, it is the duty of this court independently to assess whether an exercise of our discretionary jurisdiction is warranted because the decision below will have a substantial impact on civil service law. See Devine v. White, 697 F.2d 421, 434 (D.C.Cir.1983).
 
 
 19
 Another factor bearing upon our discretionary authority to accept OPM's petition for review is the fact that OPM is challenging an award made pursuant to binding arbitration. As stated in Devine v. Nutt:
 
 
 20
 In determining whether we should exercise our discretion, we must balance the desirability of review against the traditional labor policy of judicial deference to arbitrators' decisions. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 [80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424] (1960); United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 569 [80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403] (1960); White, supra, 697 F.2d at 434-36.
 
 
 21
 718 F.2d at 1052. This court will, therefore, exercise even greater scrutiny when OPM's petition for review involves an appeal from an arbitrator's award.
 
 
 22
 In the present case, the issue of whether to grant OPM's petition for review has been resolved by an earlier ruling of this court in which respondents' motion to dismiss was denied in an order dated April 12, 1983. Respondent's motion to dismiss was based on two grounds: (1) OPM failed to seek reconsideration of the arbitrator's decision in a timely fashion;[4] and (2) the case did not merit discretionary review because it does not satisfy the criteria of 5 U.S.C. Sec. 7703(d), i.e., OPM has not demonstrated that the arbitrator erred in his application of civil service law and that the award will have a substantial impact on civil service law. The order of April 12, 1983, rejected respondents' characterization of OPM's petition as nothing more than "disagreement with the factual determinations and judgments made by the arbitrator" in reaching his decision.
 
 
 23
 OPM asserts that the arbitrator erred in interpreting civil service law and that his decision will have a substantial impact on civil service law in that he (1) erroneously exercised the power to reinstate an employee whose appointment was void because it was obtained through material falsification on his application for employment; or (2) applied the wrong standard of review in determining that the agency's decision to remove the employee should be mitigated to a suspension. Each of these assertions will be discussed in turn.
 
 II
 
 24
 OPM relies on the following support for its contention that an appointment obtained through fraud or misrepresentation is a "nullity": (1) the power of appointment is exclusively a management function, see 5 U.S.C. Sec. 7106(a)(2) (1982),[5] and thus not subject to arbitration; (2) pre-CSRA opinions of the Comptroller General, B-185443 (Aug. 4, 1976), B-184611 (Oct. 2, 1975), regarding the right to compensation after the employee has been removed for material misrepresentation on his application for employment, support the position that such an appointment is "void" or "voidable";[6] (3) according to the RESTATEMENT (SECOND) OF CONTRACTS Sec. 164(1) (1981), a misrepresentation of material fact inducing another to enter into a contract renders that contract voidable at the option of the party to whom the misrepresentation is made;[7] (4) OPM regulations reflect the "fact" that an appointment obtained through fraud or misrepresentation is voidable at the option of the agency, as 5 C.F.R. Sec. 731.301(a) (1982) renders every appointment "subject to investigation by OPM" concerning the "qualifications and suitability" of an appointee; (5) public policy considerations support OPM's position, as the dishonest applicant will be unfairly rewarded if the appointment is not deemed to be a nullity; and (6) the following decisions support OPM's position by implication: in Vukonich v. Civil Service Commission, 589 F.2d 494 (10th Cir.1978), the court held that the withdrawal of an appointment was not an adverse action, and the United States Court of Claims, in Powers v. United States, 169 Ct.Cl. 626 (1965), and Nelms v. United States, 167 Ct.Cl. 423 (1964), cert. denied, 381 U.S. 943, 85 S.Ct. 1781, 14 L.Ed.2d 706 (1965), has upheld the discharge of an employee whose position was obtained through falsification. From the foregoing, OPM concludes that "[i]t follows logically that, if the grievant was not validly appointed because his appointment was obtained through misrepresentation, once that fact is established, he is not entitled to the benefits of employment, such as arbitral review of the appropriateness of the discharge." In other words, once misrepresentation is proven, arbitral review (and by implication, judicial review) concerning the appropriateness of the penalty is barred.
 
 
 25
 OPM's contention that an appointment obtained through material misrepresentation is void or voidable borders on the whimsical. Nowhere in the CSRA can we find the statement or implication that a removal based upon an appointment obtained through material misrepresentation is to be treated differently from any other basis for an adverse action. The attenuated analogies offered by OPM provide scant basis for the conclusion that once the fact of material misrepresentation is proven, no review of the penalty imposed is possible. In essence, OPM suggests that this court adopt a radical departure from the procedural safeguards provided for in the CSRA without providing any relevant statutory, regulatory or judicial basis for such a departure.[8] As respondents point out, even OPM's own regulations speak in terms of "removal" of an employee for suitability disqualifications, including intentional false statements, not the "voiding" of an invalid appointment. See 5 C.F.R. Secs. 731.201, 731.301(a)(2), 731.302(a)-(d). Furthermore, OPM's regulations provide for the normal procedural safeguards under the CSRA when an employee is removed for intentional false statements, whether the action is initiated by OPM, 5 C.F.R. Sec. 731.302(b), or the agency, 5 C.F.R. Sec. 731.302(c).
 
 
 26
 Furthermore, the employing agency treated the falsification charges as a matter subject to the normal adverse action procedures, rather than the "voiding" of an invalid appointment. As mentioned earlier, both the Customs Service and NTEU submitted the issue of mitigation of the penalty to the arbitrator for resolution. In response, OPM points out that in Devine v. Nutt this court recognized "that OPM's position on the issues raised in the appeal may differ from those of either party to the arbitration ...." 718 F.2d at 1052 n. 8. The proposition that OPM may argue a position contrary to that of the agency, however, does not detract from the fact that the agency's conduct may have some bearing on the court's consideration of the issues before it. This is particularly true where, as here, the arbitration was entered into pursuant to a collective bargaining agreement and both parties agreed on the issues subject to arbitration. Fundamental fairness requires that, at the very least, the agreement reached by the parties is not simply to be ignored.
 
 
 27
 We certainly agree with OPM that obtaining an appointment through material misrepresentation is a very serious offense that should not be easily condoned. And, as OPM points out, the Court of Claims has upheld the removal of an employee whose appointment was obtained through fraud or misrepresentation. See, e.g., Verrault v. United States, 578 F.2d 1389, 216 Ct.Cl. 386 (1978); Powers, 169 Ct.Cl. 626. These decisions, however, directly contradict OPM's position that in cases of misrepresentation the penalty imposed by the agency is unreviewable. Verrault, 216 Ct.Cl. at 388, Powers, 169 Ct.Cl. at 632.[9] It involves a quantum leap of logic to start with the premise that misrepresentation may properly form the basis for removal, a position that no one disputes, and then conclude that review of the penalty imposed is therefore barred.
 
 
 28
 In short, OPM's assertion that an appointment obtained through material misrepresentation is void or voidable per se is without merit. Walton, as a nonprobationary employee, was entitled to the same procedural safeguards and review as any other employee subject to an adverse action under the CSRA, including review of the appropriateness of the penalty imposed by the agency.
 
 III
 
 29
 Alternatively, OPM contends that the arbitrator utilized the wrong standard in mitigating Walton's removal to a suspension. More specifically, OPM asserts that the arbitrator erred in not applying the standards for mitigation of penalties set out in the MSPB's decision in Douglas v. Veterans' Administration, 5 MSPB 313 (1981). This argument is premised on the assumption that an arbitrator is bound to follow the precedents of the MSPB.
 
 
 30
 OPM cites Devine v. White, 697 F.2d at 441, and Devine v. Nutt, 718 F.2d at 1054, for the proposition that an arbitrator must apply the same standard of review to agency disciplinary actions as the MSPB.[10] Thus, argues OPM, an arbitrator must apply the same standard to mitigation of penalties as that used by the MSPB. We find no support for OPM's position in the cases cited.
 
 
 31
 In Devine v. White and Devine v. Nutt, the D.C. Circuit and this court both held that the "harmful error" standard applied to arbitral awards. Both decisions noted that 5 U.S.C. Sec. 7121(e)(2) states that in matters dealing with unacceptable performance and adverse actions "an arbitrator shall be governed by section 7701(c)(1) ...." Section 7701(c)(1) sets forth the "substantial evidence" standard for agency actions based on unacceptable performance (section 4303) and the "preponderance of the evidence" standard for adverse actions (section 7512).[11] In both White and Nutt, the courts noted that section 7701(c)(1) is made "[s]ubject to" paragraph (2), which includes the "harmful error" standard. White, 697 F.2d at 441, Nutt, 718 F.2d at 1054 n. 12. Thus, both decisions held the arbitrator bound to the application of a statutory standard of review. OPM, however, urges that we hold an arbitrator bound to the precedents of the MSPB, a position unsupported by the cases cited.
 
 
 32
 We agree with the D.C. Circuit's statement in Local 2578, AFGE v. GSA, 711 F.2d 261, 264 (1983), that "nothing in the CSRA requires that arbitration and MSPB actions always adhere to the same standards and procedures, or produce the same results in like cases."[12] OPM asserts that Local 2578 was wrongly decided, as seen by the legislative history of the CSRA. The Senate Report states that the purpose of the judicial review provision in the grievance procedures section (section 7121(f))[13] is "intended to assure conformity between the decisions of arbitrators with those of the Merit Systems Protection Board." S.REP. NO. 969, supra, at 111, reprinted in 1978 U.S.CODE CONG. & AD.NEWS at 2833. The House Report states that the provision providing that an arbitrator must follow the same rules governing standard of proof as the MSPB (section 7121(e)(2)) was adopted "in order to promote consistency in the resolution of these issues, and to avoid forum shopping." H.R.REP. NO. 1717, 95th Cong., 2d Sess. 157, reprinted in 1978 U.S.CODE CONG. & AD.NEWS 2860, 2891.
 
 
 33
 There is no conflict between the quoted passages from the legislative history of the CSRA and the proposition that an arbitrator is not bound by MSPB precedents. The above comments from the legislative history are addressed to specific statutory provisions that cannot be read to support OPM's position that an arbitrator is bound by MSPB precedents. If anything, the absence of any statutory support for such a position produces a negative inference.
 
 
 34
 For purposes of this opinion, we need not decide whether an arbitrator is always or never bound by MSPB precedents. It will suffice to say that the arbitrator here did not err by not specifically addressing himself to the Douglas opinion, as we find no conflict between the arbitrator's opinion and the MSPB's decision in Douglas.
 
 
 35
 OPM asserts that the arbitrator erred by not giving enough deference to the agency's choice of penalty in this case, as required in Douglas.[14] We cannot agree. It is obvious that the arbitrator weighed many factors in his determination concerning the appropriateness of the penalty, including the agency's legitimate concern over falsification of applications for employment. But the arbitrator also found that only one of the numerous agency charges was supported by a preponderance of the evidence[15] and that Walton had performed well in his appointed duties. In the arbitrator's judgment, Walton's removal would not have promoted the efficiency of the service. Whether the MSPB might have reached a contrary conclusion is simply not relevant to our review of the arbitrator's award, which was rendered pursuant to authority given to him by agreement of the parties to the arbitration and pursuant to law.
 
 
 36
 In Devine v. Nutt, this court held that an arbitrator's award is entitled to finality if--
 
 
 37
 [t]he award draws its essence from the collective bargaining agreement, see United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 [80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424] (1960), and is not in conflict with civil service statutory or regulatory authority. See White, supra, 697 F.2d at 440.
 
 
 38
 718 F.2d at 1055. It is undisputed that the arbitrator's award in this case drew its essence from the National Agreement.[16] The arbitrator addressed the very issues that were presented to him by the parties--i.e., whether Walton was removed for just cause and whether a lesser penalty would be appropriate. In addition, we hold that the award was not in conflict with any civil service law or regulation. The arbitrator's award, therefore, is entitled to finality.
 
 
 39
 As a final note, we question whether the issue of the arbitrator's balancing of the factors concerning mitigation is even an issue properly appealed by OPM under 5 U.S.C. Sec. 7703(d). As mentioned, OPM should only bring a petition for review in "exceptional" cases where the MSPB or arbitrator erred in its application of civil service law and the decision will have a substantial impact on civil service law. Having decided all the issues of law likely to have a substantial impact on civil service law, the remaining issue concerning mitigation is essentially a matter of judgment closely tied to the facts of this case, precisely the type of issue which OPM should not petition for review. It would frustrate the purpose of the limited, discretionary appeal provision of section 7703(d) for OPM to request that this court decide issues that clearly will not have a substantial impact on civil service law. It is with some hesitation, therefore, that we have addressed the mitigation issue in the present case.
 
 CONCLUSION
 
 40
 OPM's assertions that (1) the arbitrator erroneously exercised the power to reinstate an employee whose appointment was void because it was obtained through material falsification, or (2) the arbitrator applied the wrong standard of review in mitigating the penalty, are without legal merit. Accordingly, the arbitrator's award mitigating Walton's removal to a 30-day suspension is affirmed.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 OPM petitions for review under 5 U.S.C. Sec. 7703(d) are made applicable to arbitration awards under 5 U.S.C. Sec. 7121(f) (1982)
 
 
 [2]
 Although there is a slight variation in the phrasing of the issues submitted by NTEU and the agency, both parties essentially agreed on the issues to be decided
 
 
 [3]
 The arbitrator used the preponderance of the evidence standard in making his findings regarding the adverse action, as required by the National Agreement and 5 U.S.C. Sec. 7121(e)(2)
 
 
 [4]
 In the April 12, 1983 order, the court held that OPM must seek reconsideration of the decision of the MSPB or of the arbitrator under section 7703(d) within 30 days of the decision. Under this rule, OPM's request for reconsideration was not timely. OPM's failure to seek reconsideration in a timely fashion was excused, however, because of prior uncertainty in the law. In an order dated June 2, 1983, the court clarified the earlier order to state that the 30-day time period within which OPM may seek reconsideration runs from the date OPM receives notice of the decision of the MSPB or the arbitrator, as the case may be
 
 
 [5]
 Section 7106, Management rights, states that (a) "nothing in this chapter shall affect the authority of any management official of any agency ... (2) in accordance with applicable laws--(A) to hire ... employees in the agency ...."
 
 
 [6]
 Of course the Comptroller General is not empowered, under the CSRA or prior law, to review the actual discharge of an employee
 
 
 [7]
 OPM recognizes that this case is not governed by contract law, but suggests that an analogy is "instructive."
 
 
 [8]
 Concerning OPM's assertion that the arbitrator violated 5 U.S.C. Sec. 7106(a)(2), which provides, inter alia, that management has the right to hire, the simple answer is that Walton was "hired" in July 1979, some two and one-half years before the effective date of his removal. Only if OPM's ultimate conclusion that Walton's appointment was void is adopted does it make any sense to assert that the arbitrator's mitigation of the penalty interferes with management's right to hire employees
 
 
 [9]
 In Nelms v. United States, 167 Ct.Cl. 423, plaintiff unsuccessfully challenged her removal on the basis of alleged procedural irregularities, but did not challenge the appropriateness of the penalty imposed
 
 
 [10]
 OPM also cites Devine v. Goodstein, 669 F.2d 736 (D.C.Cir.1981), in support of its position. In Goodstein, the issue before the court was whether it was the duty of the arbitrator to file the record in the reviewing court. The only arguably relevant portion of the decision is the statement "[t]he provision of the Civil Service Reform Act calling for parallel treatment of an arbitrator's award and the decision of the Merit Systems Protection Board (MSPB) leads to the same conclusion [namely, an arbitrator must file the record with the court]." 669 F.2d at 737
 
 
 [11]
 Clearly, the arbitrator properly utilized the "preponderance of the evidence" standard in his decision
 
 
 [12]
 In Local 2578, the court held that the arbitrator erred in failing to consider the question of mitigation of the penalty. In this case, the arbitrator obviously considered mitigation and, unlike the arbitrator in Local 2578, he was specifically authorized to do so by the parties. We therefore need not reach the issue decided in Local 2578
 
 
 [13]
 Section 7121(f) states in relevant part:
 "In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board."
 
 
 [14]
 In Douglas, the MSPB stated that "[m]anagement of the federal work force and maintenance of discipline among its members is not the Board's function. Any margin of discretion available to the Board in reviewing penalties must be exercised with appropriate deference to the primary discretion which has been entrusted to agency management, not to the Board." 5 MSPB at 328 (footnote omitted)
 
 
 [15]
 The MSPB in Douglas emphasized that the board should pay special attention to the penalty imposed where not all of the agency's charges are sustained. The board stated that "[w]henever the agency's action is based on multiple charges some of which are not sustained, the presiding official should consider carefully whether the sustained charges merited the penalty imposed by the agency." 5 MSPB at 334 (footnote omitted)
 
 
 [16]
 OPM asserts that Walton's removal was not subject to arbitration because his appointment was "void," not that his removal was not covered by the collective bargaining agreement