# United States Court of Appeals for the Federal Circuit

---

**EDWARD M. AVALOS,**
*Petitioner*

**v.**

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**
*Respondent*

---

2019-1118

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-18-0004-I-1.

---

Decided: June 26, 2020

---

RICHARD RANDOLPH RENNER, Kalijarvi, Chuzi, Newman & Fitch, PC, Washington, DC, argued for petitioner.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; NADIA K. PLUTA, Office of General Counsel, United States Office of Personnel Management, Washington, DC; MARCUS R. PATTON, MAUREEN E. VILLARREAL, Office of General Counsel, United States

Department of Housing & Urban Development, Fort Worth, TX.

———————————

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This is a case about the removal of a federal employee who was illegally appointed to his position in the civil service. Mr. Edward M. Avalos appealed his removal from employment as the Field Office Director in Albuquerque, New Mexico, for the United States Department of Housing and Urban Development to the Merit Systems Protection Board. Because the Board correctly found that it had jurisdiction to review Mr. Avalos's appointment and because substantial evidence supports the agency's decision to remove Mr. Avalos to correct his illegal appointment, we affirm.

I

A

In October 2009, Mr. Avalos was confirmed as the Under Secretary of Agriculture for Marketing and Regulatory Programs at the United States Department of Agriculture, a Level III Senior Executive Schedule position in the excepted service. *See* 5 U.S.C. § 5314. During his nearly eight-year tenure at the USDA, Mr. Avalos crossed paths with Ms. Tammye Treviño, a fellow USDA political appointee then serving as the Administrator for Rural Housing Service. In September 2015, HUD announced that it needed to fill a vacancy for the Field Office Director position in its Albuquerque office. Ms. Treviño, now working

at HUD, was involved in developing this vacancy announcement and reviewing candidates.[1]

Mr. Avalos applied for this Field Office Director position, but he did not make the certificate of eligible candidates from which selection would be made. The certificate listed only one candidate, a preference-eligible veteran. Ms. Treviño, apparently disappointed with the applicant choices, sought to consider additional candidates who were qualified, but not preference eligible. She did not, however, complete a pass-over request under 5 C.F.R. § 3318(a), (c)(1), which would allow her to consider additional candidates, instead letting the certificate of eligibles expire.

Before the certificate of eligibles for the first vacancy announcement expired, Ms. Treviño began revising the vacancy announcement; after the first certificate expired, HUD again announced the vacancy. Mr. Avalos applied once more. This time he was the only candidate listed on the certificate of eligibles. According to Ms. Treviño, she had recused herself from acting as the selecting official after seeing Mr. Avalos's name on this certificate of eligibles, but some ambiguity remains about the manner, scope, and timing of Ms. Treviño's recusal.

---

[1]    The parties dispute whether Ms. Treviño acted as the "selecting official"—"the person having the authority, by law, or by duly delegated authority, to appoint, employ, or promote individuals to positions in an agency," J.A. 40—for this position. HUD suggests that Ms. Treviño received the certificate of eligibles, which, regardless of other facts, makes her the selecting official. *See* Resp. Br. 9, 13; *see also* J.A. 599. Mr. Avalos points out Ms. Treviño's testimony that her manager, Ms. Mary McBride, was always acting as the selecting official, to assert otherwise. *See* Pet. Br. 4; J.A. 643, 649–50.

HUD interviewed Mr. Avalos and selected him for the position, subject to the completion of a one-year probationary period.  He became HUD's Albuquerque Field Office Director effective September 18, 2016, the day following his resignation from the USDA.

B

In April 2017, during regular review of appointments to the competitive service, the Office of Personnel Management (OPM) noted that HUD had appointed Mr. Avalos without OPM approval.  OPM requested information from HUD and also sought to obtain information about Mr. Avalos's appointment on its own.  After concluding its investigation, OPM advised HUD that it would not have approved HUD's appointment of Mr. Avalos, and instructed HUD to "regularize" the appointment.[2]  J.A. 154.

After receiving OPM's directive, HUD's Human Capital Division—specifically Ms. Heather Dieguez, Director of the Office of Accountability—reviewed Mr. Avalos's appointment and reconstructed his hiring record.

---

[2]     "Case law has described regularizing an appointment as correcting the illegal component of the appointment." *Endres v. Dep't of Veterans Affairs*, 107 M.S.P.R. 455, 463 (2007) ("[B]ecause the agency has not shown that [petitioner's] appointment was regularized by either a variation or by correcting the illegal component of the appointment, [petitioner's] appointment . . . is not valid."), *enforcement dismissed*, 108 M.S.P.R. 606 (2008); *see also Avalos v. Dep't of Hous. & Urban Dev.*, No. DE-0752-18-0004-I-1, at 6 (M.S.P.B. July 19, 2018) ("Various witnesses testified that, to 'regularize' an appointment means to find a legal appointment authority, or to release or remove the employee."); *Regularize*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To make (a situation that has existed for some time) legal or official.").

Ms. Dieguez sought to determine independently whether Mr. Avalos's appointment met all merit and fitness requirements. After investigating, she found no intent to grant an unauthorized preference by HUD officials. Nevertheless, she determined that she could not certify that the appointment met merit and fitness requirements because Ms. Treviño's involvement in interviewing and selecting candidates left the "appearance of a prohibited personnel practice." J.A. 442. Because HUD could not certify that Mr. Avalos's appointment met all merit and fitness requirements, and because Ms. Dieguez could not find a separate non-competitive appointment authority for Mr. Avalos, she concluded that HUD needed to remove Mr. Avalos to regularize his appointment.

On August 16, 2017, Ms. Dieguez notified Mr. Avalos that HUD may have to remove him because of the impropriety in his appointment. On August 31, she issued him a formal Notice of Proposed Termination. On September 13, HUD's deciding official issued Mr. Avalos her Decision on Notice of Proposed Termination, removing him effective September 14, 2017.

## II

Mr. Avalos appealed his removal to the Merit Systems Protection Board. The government argued that the Board lacked jurisdiction because Mr. Avalos was removed before the end of his one-year probationary period. In response, the Board first ruled on its jurisdiction to review Mr. Avalos's appointment in a separate jurisdictional order. The Administrative Judge found that the Board had jurisdiction because Mr. Avalos met the definition of "employee" provided in 5 U.S.C. § 7511(a)(1)(A)(ii).[3]  *See* 5 U.S.C.

---

[3]    Section 7511(a) provides that "[f]or the purpose of this subchapter[,] 'employee' means an individual in the competitive service who is not serving a probationary or

§ 7513(d) ("An *employee* against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title." (emphasis added)). The Administrative Judge explained that Mr. Avalos met § 7511(a)(1)(A)(ii)'s requirement of more than a year of "current continuous service"[4] through his previous employment at the USDA. *See McCormick v. Dep't of the Air Force*, 307 F.3d 1339, 1341 (Fed. Cir. 2002).

After establishing the Board's jurisdiction, the Administrative Judge held a hearing on the merits and issued his decision. *See Avalos v. Dep't of Hous. & Urban Dev.*, No. DE-0752-18-0004-I-1 (M.S.P.B. July 19, 2018) (*Decision*). The Administrative Judge first observed that, by regulation, OPM has the authority to require an agency to "take corrective action" if OPM finds that the agency acted contrary to "a law, rule, regulation, or standard that OPM administers . . . ." *Id.* at 5 (citing 5 C.F.R. § 250.103). He then held that, because of this regulatory authority, the Board could not review OPM's "corrective action" directing HUD to "regularize" Mr. Avalos's appointment. *Id.* The Administrative Judge next found that HUD reasonably withheld certification that Mr. Avalos's appointment was free from political influence, and that in doing so, Ms. Dieguez "exercised appropriate discretion." *Id.* at 9. Finally, the Administrative Judge found that preponderant evidence showed that HUD's only option to comply with

---

trial period under an initial appointment; or . . . who has completed 1 year of current continuous service . . . ." 5 U.S.C. § 7511(a) (subsection notations omitted) (emphasis added).

[4]    A petitioner has "current continuous service" if the petitioner has maintained "a period of employment or service immediately preceding an adverse action without a break in federal civilian employment of a workday." 5 C.F.R. § 752.402.

OPM's order to "regularize" Mr. Avalos's appointment was to remove him. *Id.*

Mr. Avalos did not appeal the Administrative Judge's initial decision to the full Merit Systems Protection Board, so it became the final decision of the Board. *See* 5 U.S.C. § 7701(e)(1). He timely petitioned for review of the Board's decision. We have jurisdiction under 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9).

### III

We review the Board's jurisdictional determinations without deference. *Kelley v. Merit Sys. Prot. Bd.*, 241 F.3d 1368, 1369 (Fed. Cir. 2001). The petitioner bears the burden of establishing the Board's jurisdiction. *Perez v. Merit Sys. Prot. Bd.*, 85 F.3d 591, 592 (Fed. Cir. 1996). We review the Board's merits decisions narrowly, finding error only if the decision was arbitrary or capricious or not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c)(1)–(3); *see, e.g.*, *Graybill v. U.S. Postal Serv.*, 782 F.2d 1567, 1570 (Fed. Cir. 1986).

We first address the government's arguments that Mr. Avalos lacked the right to appeal to the Board, either because his appointment was illegal or because he was still a probationary employee at the time of his removal, and the Board therefore lacked jurisdiction.

### A

The government contends that Mr. Avalos's appointment was barred by law, and therefore that Mr. Avalos has no right to appeal his removal to the Board. In the government's view, "because HUD could not certify that [Mr. Avalos's appointment] was not free from political influence or in accordance with statutory merit system principles," OPM "did not and never could have approved Mr. Avalos's appointment." Resp. Br. 25 (emphasis removed). Under

the government's first theory, OPM's failure to approve the appointment renders his appointment invalid under 5 U.S.C. § 2105, and without a valid appointment, Mr. Avalos has no appeal rights. This theory could be interchangeably described as Mr. Avalos having nothing to appeal because he cannot be removed from a position he never rightfully had.

The Board, persuaded by opinions from the Attorney General and Government Accountability Office, resolved these arguments in *Travaglini v. Department of Education*, 18 M.S.P.R. 127, 137–38 (1983), holding that

> where an individual shows that he or she has been appointed to a position by an agency and entered onto duty under all the criteria of 5 U.S.C. § 2105(a) upon his or her certification as eligible for appointment by OPM, and where the appointment is subsequently found to have been improper or erroneous under law, rule or regulation, the appointee is an "employee" for the purpose of § 2105(a) unless—
>
> (1) the appointment is made in violation of an absolute statutory prohibition so that the appointee is not qualified for appointment in the civil service, or
>
> (2) the appointee has committed fraud in regard to the appointment or has misrepresented or concealed a matter material to the appointment.

*Id.* The government adopts *Travaglini*'s rule in the alternative to its broader argument that *Travaglini* itself rejected, arguing that OPM's failure to approve Mr. Avalos's appointment acts as "an absolute prohibition" on Mr. Avalos's appointment that would divest Mr. Avalos of his appeal rights under *Travaglini*.

We have "occasionally noted but not endorsed" the Board's resolution of this issue. *Elgin v. Dep't of the*

*Treasury*, 641 F.3d 6, 10 (1st Cir. 2011) (examining Federal Circuit precedent regarding the Board's jurisdiction over the removal of illegally appointed employees in deciding whether the Board had exclusive jurisdiction over plaintiff's claims), *aff'd on other grounds*, 567 U.S. 1 (2012); *see id.* at 10 n.3 (summarizing our limited discussion of the Board's "absolute statutory prohibition" doctrine). We need not adopt or reject the Board's jurisprudence in this case—it is enough to say that, assuming the Board's rule is correct, such an "absolute statutory prohibition" does not exist here. An absolute prohibition exists when an appointee could *never* be eligible for a position in the civil service, not for decisions made on a case-by-case basis. *Cf. Hope v. Dep't of the Army*, 108 M.S.P.R. 6, 9 (2008) ("[Q]ualification requirements may prohibit an appointment under a certain set of circumstances (i.e., the lack of a particular qualification), but they necessarily cannot act as an absolute bar to the appellant's appointment in the civil service in all circumstances."); *Wallace v. Dep't of Commerce*, 106 M.S.P.R. 23, 30 (2007) ("There is no evidence in the record to support a finding that Martin was not qualified for appointment in the civil service or that, in the absence of nepotism, she was not qualified for appointment to the particular position to which the agency appointed her.").

Mr. Avalos's status as a former political appointee cannot fairly be considered an absolute statutory bar to his selection. We can only speculate about whether Mr. Avalos would have been appointed as HUD's Albuquerque Field Office Director had HUD strictly followed the correct competitive hiring practices. But the government does not dispute that Mr. Avalos would have been eligible for the position under proper hiring practices. *See* Resp. Br. 29 (arguing merely that Mr. Avalos was subject to an absolute statutory prohibition because OPM could not certify that his appointment was free from political influence). The government correctly notes that Mr. Avalos's appointment violated several statutory prohibitions, *id.* at 24–25, but

these prohibitions on Mr. Avalos's selection because of improper selection practices do not rise to the level of an "absolute statutory prohibition" barring his appointment. OPM did not refuse to approve Mr. Avalos's appointment because he was categorically ineligible to be HUD's Albuquerque Field Office Director. It refused to approve his appointment because HUD could not certify that his selection was free from political influence. *E.g.*, J.A. 365.

We also reject the government's broader argument—that Mr. Avalos cannot appeal because his appointment was invalid, and he is thus not an employee for the purposes of appealing his separation from his HUD position. "Section 7511 defines what 'employee' means for [appeals under § 7513(d)] . . . . [because its] definition modifies, for adverse actions, the general definition of a federal civil-service 'employee' set out in 5 U.S.C. § 2105." *Mitchell v. Merit Sys. Prot. Bd.*, 741 F.3d 81, 83 (Fed. Cir. 2014). S*ee* § 7511(a)(1)(A)(ii) ("For the purpose of this subchapter[,] 'employee' means an individual in the competitive service . . . who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less . . . ." (subsection notations omitted)); § 2105(a)(1) ("For the purpose of this title, 'employee', except as otherwise provided by this section or when specifically modified, means an officer and an individual who is appointed in the civil service by [,among others, 'an individual who is an employee under this section,'] acting in an official capacity . . . ." (subsection notations omitted)).

Section 7511 does not implicitly abrogate the requirements of § 2105. We do not today hold that an employee who plainly does not hold a federal position, or who was appointed by someone without even the color of authority to appoint an employee has Board appeal rights. But in light of the considerations underlying § 7511, when defining "employee" for § 7511 we must relax the severity of our construction of "appointed" under § 2105. We have "strictly applied" the test for federal employment under § 2105,

*Horner v. Acosta*, 803 F.2d 687, 691 (Fed. Cir. 1986), in light of concerns that to do otherwise "could easily bring about chaos in government personnel management." *Goutos v. United States*, 552 F.2d 922, 925 (Ct. Cl. 1976). However, these requirements have been applied in cases where our finding an appointment would confer substantive benefits, not the mere procedural rights at issue here. *E.g.*, *Bevans v. Office of Pers. Mgmt.*, 900 F.2d 1558 (Fed. Cir. 1990) (determining whether an employee of a proprietary corporation of the CIA met the definition of § 2105 to establish entitlement to survivorship benefits); *Baker v. United States*, 614 F.2d 263 (Ct. Cl. 1980) (deciding whether an employee of a state agency participating in a federal-state cooperative program funded by the Department of Labor met § 2105 to be entitled to creditable service for a retirement annuity).

We have more generously defined the scope of appointment for appeal rights where our refusal to void an appointment would confer only the ability to contest the petitioner's entitlement to an appointment before the Board, rather than conferring that entitlement. In *Devine v. Sutermeister*, 724 F.2d 1558, 1563 (Fed. Cir. 1983), we refused to hold that "an appointment obtained through material misrepresentation is void or voidable," describing this argument as "border[ing] on the whimsical" because "[n]owhere in the [Civil Service Reform Act] can we find the statement or implication that a removal based upon an appointment obtained through material misrepresentation is to be treated differently from any other basis for an adverse action." Distinguishing the substantive from the procedural, we explained that "[i]t involves a quantum leap of logic to start with the premise that misrepresentation may properly form the basis for removal, a position that no one disputes, and then conclude that review of the penalty imposed is therefore barred." *Id.* at 1564.

If a petitioner's deliberate nondisclosure of criminal convictions does not render his appointment to a sensitive

position voidable and prevent review of the petitioner's removal, *Sutermeister*, 724 F.2d at 1561, it would be unreasonable to hold that an agency's blunders during the selection process—prior to the appointment, and through no fault of the appointee—would do so. Holding that Mr. Avalos has no appeal rights would put someone who was indisputably acting as a member of the competitive service for nearly a year in the same position as someone who had never stepped foot in a federal building. It would do so in a manner that begs the question, too—Mr. Avalos would lose his appeal rights based on the very facts that he disputes in the appeal, without any post-termination process to dispute those facts. We cannot agree that Congress intended the "removal" of "employees" to be construed in such a stilted manner when it passed the Civil Service Reform Act.[5]

---

[5]   Our sister circuits agree that the Civil Service Reform Act does not so narrowly limit the Board's jurisdiction. *See Elgin*, 641 F.3d at 11 (noting, in the course of finding that the Board had exclusive jurisdiction over a challenge to the constitutionality of plaintiff's removal, that "[t]he plaintiffs in this case were hired by the federal government, served (in some cases for many years) as its employees, exercised official authority, and were then terminated. The idea that Congress would implicitly exclude them from the category of former 'employees' entitled to seek redress under the [Civil Service Reform Act] . . . beggars belief."); *Miller v. United States*, 717 F.2d 109, 113 (3d Cir. 1983) (reviewing a Board decision before the Federal Circuit took exclusive jurisdiction and finding that it "would not serve the putative purpose of section 7511 to deny [petitioner] review of the subsequent decision to revoke" his conversion from a temporary appointment to a permanent appointment for which he was not eligible).

B

The government alternatively argues that the Board lacked jurisdiction because Mr. Avalos had not completed a one-year probationary period in the competitive service to accrue appeal rights. But Mr. Avalos need only show that he has completed more than one year of "*current continuous service* under other than a temporary appointment*" to establish that he was an employee with the right to appeal his removal from HUD. *McCormick*, 307 F.3d at 1342 (emphasis added).

Under 5 C.F.R. § 752.402, "current continuous service" means "a period of employment or service immediately preceding an adverse action without a break in [f]ederal civilian employment of a workday." This definition does not exclude service as a political appointee: even if political appointees have no right to appeal adverse actions to the Board, they remain part of the civil service and qualify as "[f]ederal civilian employ[ees]" under any reasonable interpretation of that term. *See* 5 U.S.C. § 2101 ("For the purpose of [title 5] . . . the 'civil service' consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services . . . ."); *Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1322 (Fed. Cir. 2012) (finding OPM's interpretation of § 7511—that "[f]ederal civilian employment" as opposed to military service counts toward "current continuous service"—reasonable and consistent with the statute).

After working at the USDA for almost eight years, Mr. Avalos resigned on September 17, 2016, and began working at HUD the next day. Given this years-long period of "federal civilian employment," Mr. Avalos had completed significantly more than one year of "current continuous service" at the time of his removal. As a result, Mr. Avalos had the right to appeal his removal to the Board; the Board had the jurisdiction to review it.

IV

We next move to the merits, addressing Mr. Avalos's arguments that the Board incorrectly found that HUD had justification for his removal.

A

The Administrative Judge found that "HUD had a reasonable basis to withhold certification that the appellant's competitive service appointment was free from political influence, particularly because [Ms.] Treviño was involved in preparing the second vacancy announcement that resulted in the appellant being the sole referred applicant on the certificate of eligibles." *Decision* at 9. The record contains substantial evidence supporting the appearance of improper influence and HUD's resultant refusal to certify to OPM that Mr. Avalos's appointment was compliant with merit systems principles, such as Ms. Treviño's choice to abandon the first certificate of eligibles rather than to obtain a pass-over request to consider candidates other than a preference-eligible veteran. *See* J.A. 440–42 (detailing the selection process and HUD's concerns with the events), 621–22 (explaining how Ms. Treviño's abandonment of the first certificate of eligibles created an appearance of impropriety), 597–601 (describing how recordkeeping errors prevented HUD from concluding that Ms. Treviño recused herself).

That Ms. Treviño recused herself from the selection process at some point does not require a different conclusion. HUD did not need to show that political influence was the only, or even the most likely, explanation for HUD's mistakes in selecting Mr. Avalos. It need only show substantial evidence to support a finding that Mr. Avalos's selection was not *free from* political influence. Moreover, the record need not indisputably support the government's characterization of the selection process for the Board's decision to merit affirmance, especially since the Administrative Judge heard live testimony from the witnesses. *See In*

*re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013) ("'[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" (quoting *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002))); *Wright v. U.S. Postal Serv.*, 183 F.3d 1328, 1334 (Fed. Cir. 1999) ("[C]redibility determinations by the board are 'virtually unreviewable.'" (quoting *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 436 (Fed. Cir. 1986))).

Substantial evidence supports the Administrative Judge's finding that HUD could not reasonably certify Mr. Avalos's appointment to be free from political influence. We therefore affirm Mr. Avalos's removal.

B

Mr. Avalos argues that the Administrative Judge legally erred by failing to make a finding on whether the removal promoted the efficiency of the service. *See* 5 U.S.C. § 7513(a) ("Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service."). In Mr. Avalos's view, "no such finding can be made in this case because [he] was not removed for performance or conduct reasons." Pet. Br. 42. But the law is not so narrow: "The agency must demonstrate a rational basis for its conclusion that a discharge will promote [the] efficiency [of the service]. . . . [A]gencies are vested by law with the discretionary authority and responsibility to determine what is necessary for their efficiency in discharging the missions assigned to them by Congress . . . ." *Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1333 (Fed. Cir. 1986); *see also Hatfield v. Dep't of Interior*, 28 M.S.P.R. 673, 675 (1985) ("An adverse action promotes the efficiency of the service when the grounds for the action relate to either an employee's

ability to accomplish his duties satisfactorily or to some other legitimate government interest."). Additionally, § 7513(a) explicitly references OPM's authority to prescribe regulations governing this decision, suggesting some deference to OPM's command for action is warranted.

HUD had a rational basis for determining that Mr. Avalos's removal promotes the efficiency of the service. Although the Administrative Judge's finding that HUD had a reasonable basis to refuse to certify Mr. Avalos's appointment as free from political influence does not explicitly reference the efficiency of the service, any error arising from such an omission is harmless. By evaluating whether Mr. Avalos's appointment was free from political influence, HUD—concededly, at OPM's urging—was trying to certify that its hiring process complied with merit systems principles. For example, merit systems principles dictate that Mr. Avalos's selection had to rest "solely on the basis of relative ability, knowledge, and skills, after fair and open competition," giving applicants "fair and equitable treatment . . . without regard to political affiliation" and that the selection did not violate a veterans' preference requirement. 5 U.S.C. §§ 2301(b)(1)–(2), 2302(b)(11). These merit systems principles are not mere guidelines. "OPM's goals of ensuring that political considerations not enter into the recruitment and selection process for competitive-service positions, and that selection occur only after fair and open competition, are based on the express will of Congress." *Beam v. Office of Pers. Mgmt.*, 66 M.S.P.R. 469, 476 (1995); *see Hatfield*, 28 M.S.P.R. at 676 ("[T]he government has a legitimate interest in protecting the competitive process.").

HUD did not even need to rely on OPM's order to regularize Mr. Avalos's appointment to reasonably find that Mr. Avalos's removal would promote the efficiency of the service once it was fully aware of the deficiencies in his appointment. HUD's legitimate interest in removing the appearance of political influence in Mr. Avalos's appointment (and that further investigation could not entirely dispel)

promotes the efficiency of the service by improving compliance with merit systems principles. *Cf. Hatfield*, 28 M.S.P.R. at 675–76 (affirming a decision to remove an illegal appointee—notwithstanding the appointee's adequate performance—because "the agency's method of appointing appellant was used to circumvent the competitive process, thereby violating merit systems principles" and removal of the employee therefore promoted efficiency of the service). Thus, the Administrative Judge's finding that "HUD had a reasonable basis to withhold certification that [Mr. Avalos's] competitive service appointment was free from political influence," *Decision* at 9, serves as adequate basis to find that Mr. Avalos's removal promotes the efficiency of the service.

C

Mr. Avalos argues that, even if the Administrative Judge's finding supports the need to regularize Mr. Avalos's appointment, the Administrative Judge erred by allowing agency testimony to establish that removal was required to regularize the appointment "in place of legal authorization . . . ." Pet. Br. at 43–44. But authority to regularize an illegal appointment to promote the efficiency of the service necessarily implies authority to remove the illegal appointee. "We give wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action." *Einboden v. Dep't of the Navy*, 802 F.3d 1321, 1325–26 (Fed. Cir. 2015). Given this discretion, HUD had no obligation to seek a variation as Mr. Avalos argues, whether or not HUD "thought OPM would deny it."[6] Pet. Br. 44–45.

---

[6] One other option for regularizing Mr. Avalos's appointment would have been to find retroactively a non-

Even assuming HUD had the obligation to attempt to regularize Mr. Avalos's appointment through a variation, HUD had a reasonable basis to determine that such an attempt would be futile. To obtain a variation, HUD would have had to show that the variation "is within the spirit of the regulations" and would protect and promote the "integrity of the competitive service." 5 C.F.R. § 5.1; *see also Meeker v. Merit Sys. Prot. Bd.*, 319 F.3d 1368, 1376 (Fed. Cir. 2003) (setting forth the test for a valid variation). Mr. Avalos's removal arose from HUD's failure to observe procedures integral to the competitive hiring process, which itself forms the foundation of the integrity of the competitive service. Since HUD lacked a reasonable basis to conclude that Mr. Avalos's appointment was free from political influence, it could also have reasonably determined that OPM would not grant a variation. Doing so would undermine the integrity of the competitive service by excusing both HUD's violation of OPM rules and regulations on the conversion of political appointees to the competitive service and HUD's departure from hiring best practices set forth to promote merit systems principles.

V

We have considered the parties' remaining arguments and find them unpersuasive.[7] Because the Board had

competitive appointment authority. Undisputed evidence shows that HUD tried to find a non-competitive authority for appointing Mr. Avalos to regularize his appointment, and the parties do not dispute that Mr. Avalos lacked any non-competitive eligibility.

[7] The government concedes that, if Mr. Avalos were an employee under 5 U.S.C. § 7511—as we conclude—he is entitled to 16 days of pay because he was terminated without 30 days' notice under 5 U.S.C. § 7513(b)(1). *See* Resp. Br. at 57 (citing *Stephen v. Dep't of the Air Force*, 47 M.S.P.R. 672, 688–89 (1991)).

jurisdiction to hear Mr. Avalos's appeal and substantial evidence supports that HUD needed to "regularize" Mr. Avalos's appointment by removing him from his position, we affirm the Board's decision.

## AFFIRMED

No costs.